UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **JOHN SWIGART** | : | Case No.: 3:24-cv-870 |
| 1814 S. Anderson Rd | : | |
| Port Clinton, OH 43452 | : | |
| | : | Judge: |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| **ERIE COUNTY** | : | |
| c/o Erie County Prosecutor | : | |
| 2900 Columbus Ave | : | |
| Sandusky, OH 44870 | : | |
| | : | |
| and | : | |
| | : | |
| **MICHAEL KENNEDY** | : | |
| (In official and individual capacities) | : | |
| c/o Erie County Prosecutor | : | |
| 420 Superior Street | : | |
| Sandusky, OH 44870 | : | |
| | : | |
| and | : | |
| | : | |
| **PETER SCHADE** | : | |
| (In official and individual capacities) | : | |
| c/o Erie County Prosecutor | : | |
| 420 Superior Street | : | |
| Sandusky, OH 44870 | : | |
| | : | |
| Defendants. | : | |
| | : | |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff John Swigart states the following for his claims against Defendants Erie County, Michael Kennedy, and Peter Schade:

1

**INTRODUCTION**

1. This is a claim brought under both the First and Fourth Amendments of the United States Constitution by Plaintiff Swigart against Defendants for unconstitutional retaliation against Swigart by Defendants because of Swigart's viewpoints and protected free speech rights. While standing on public property outside of a government-led COVID vaccine initiative, Swigart handed literature to drivers when drivers voluntarily stopped their vehicles and rolled down their windows to receive Swigart's flyer. At no time did Swigart step in front of vehicles or block vehicles from their intended destination. This literature was information regarding the dangers of the Covid vaccines. This literature was critical of the government's vaccine initiative. Because Defendants were angry about the viewpoints contained in Swigart's literature, and Defendants wanted to restrain Swigart's speech and punish him, the Defendants abused their authority and police power and arrested Swigart in violation of the United States Constitution.

**PARTIES**

2. Plaintiff Swigart is a resident of Ottawa County, Ohio.

3. Defendant Erie County ("County") is a county located in Ohio, and it is situated within this district's geographic scope.

4. Defendant Michael Kennedy ("Kennedy") is a deputy of Erie County, Ohio's Sheriff Department, and he is named here in both his official and individual capacities.

5. Defendant Peter Schade ("Schade") is the Health Commissioner of Erie County, Ohio, and is a policymaker with respect to the Erie County Health Department's

health initiatives and events, and he is named here in both his official and individual capacities.

6. This Complaint will refer to all defendants collectively as ("Defendants").

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this matter because Swigart brings his claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1988 of the United States Constitution.

8. Venue is proper in this Court because the events complained of occurred in Erie County, Ohio.

## BACKGROUND INFORMATION

9. John Swigart is over seventy years old, and he uses a cane to ambulate.

10. Swigart has experience when engaging in constitutionally protected political free speech and adheres to all city, state and federal laws.

11. Swigart has previously engaged in activities related to Covid vaccines at other events and in other jurisdictions in the form of offering information to the public regarding the Covid vaccines by use of billboards, mailing of postcards and handing out flyers, and has never broken the law nor been harassed or arrested while engaging in these activities in other jurisdictions.

12. These are matters of public concern.

13. Swigart observes and obeys all laws while engaging in these activities.

14. Swigart is a member of the Catholic group Friends of Our Lady which is indicated on Swigart's flyer.

15. Here, Swigart became aware that Defendant Erie County Health Department was going to host an event wherein the Erie County Health Department intended to pass out $100 gift cards in exchange for citizens receiving a COVID vaccine.

16. Swigart believes that the vaccine is dangerous, and that people have not received necessary information to make an informed decision regarding the potential dangers of the Covid vaccine.

17. Swigart also believes that these vaccines are problematic according to his religious beliefs.

18. Swigart intended to avail himself of the First Amendment to speak out and distribute literature to people concerning the vaccine.

19. Swigart engaged in protected political and religious speech to people attending this County event.

20. Before attending the event, Swigart drove to the stated location where the vaccines were to be given to become familiar with the location and determine where he could lawfully stand to distribute his literature.

21. Swigart determined that he and his associate could peacefully, safely and legally stand on public property within the island of a roundabout.

22. This was a traditional public forum, and he could be seen by people entering the location where the vaccines were being administered.

23. On January 11, 2024, the vaccine event began.

24. Swigart and an associate came to the event, and set themselves up within the island of the roundabout, which is public property.

25. When a car stopped, Swigart would peacefully approach the driver's window, and would hand the driver (or passenger) a flyer.

26. Swigart only passed out his literature to those who voluntarily stopped their vehicle and accepted his literature.

27. Swigart has previously engaged in this type of speech without incident.

28. Swigart did not jump in front, stand in front of or block vehicles, nor hinder them in any way from advancing to their destination.

29. Swigart is over 70 years old, uses a cane, and does not throw himself in front of moving cars.

30. The Defendants became aware that Swigart and his associate were handing out flyers that were critical of the Covid vaccines.

31. Defendants became angry that Swigart's flyer contained information regarding the dangers of the Covid vaccine and might give people pause about being vaccinated, so Defendants set out to intimidate and punish Swigart's speech.

32. Based on information and belief, staff at the County Health Department informed Defendant Schade that Swigart was "passing out religious anti-vaccine material."

33. Based upon information and belief, Defendant Schade directed Defendant Kennedy to intimidate Swigart for passing out religious literature critical of the vaccine at Schade's event.

34. Swigart and his associate were able to observe Defendant Schade interacting with Defendant Kennedy and drivers as the entire event described in this Complaint unfolded.

35. Regardless, instead of telling the Heath Department and Schade that Swigart has every right to pass out "religious anti-vaccine material" to drivers like he should have, Defendant Kennedy instead decided to intimidate and harass Swigart for engaging in protected speech.

36. After his interaction with Defendant Schade, Defendant Kennedy then approached Swigart and attempted to order Swigart and his associate to leave.

37. Defendant told Swigart that if he was "interfering with traffic," he would have to order Swigart to leave.

38. The roundabout and road in question was a place of entrance to an event and public property.

39. When drivers would voluntarily stop next to the island of the roundabout and roll down their windows, Swigart would provide to them a flyer which they accepted related to the public event they were attending.

40. According to his own words, Defendant Kennedy then saw Swigart attempt to "hand a [driver] a flyer."

41. Defendant Kennedy then ordered Swigart to leave the area because he attempted to hand the driver a flyer.

42. Swigart attempted to explain to Defendant Kennedy that he was just trying to pass out literature to communicate his political and religious beliefs to drivers regarding the Covid vaccine, and that he was doing so according to his First Amendment rights.

43. Even though Swigart informed the officer his purpose was to engage in religious and political speech by passing out flyers, Defendant Kennedy still instructed Swigart to leave.

44. Defendant Kennedy continued that if he did not leave, Defendant Kennedy would arrest Swigart for obstruction.

45. Swigart agreed to leave because of the threat of arrest.

46. In his own words, Defendant Kennedy observed Swigart gather his "religious literature," so Defendant Kennedy knew Swigart was passing out what he considered as religious speech.

47. After Swigart left, Defendant Kennedy followed Swigart to his car, and he continued to harass and intimidate Swigart.

48. Even though Swigart was leaving, Defendant Kennedy arrested Swigart for disorderly conduct under R.C. § 2917.11(A)(4) because he was handing out "religious literature."

49. Defendant Kennedy handcuffed Swigart, patted him down, and placed him in a K-9 dog occupied police vehicle while handcuffed.

50. Under R.C. § 2917.11(A)(4), a person's actions are only illegal if he is "[h]indering or preventing the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act **that serves no lawful and reasonable purpose of the offender**." (emphasis added).

51. Engaging in protected speech that is religious and addresses matters of public concern is not an "unlawful purpose."

52. Defendants were well aware that Swigart's purpose was to pass out what Defendants viewed as "religious anti-vaccine" literature during their vaccination event, and said activity was the reason for his arrest as Swigart, at

7

no time, "hindered or prevented the movement of persons on a public street, road, highway, or right-of-way," nor did he block vehicles from passing.

53. Swigart could not have violated the Statute, and Defendants cannot reasonably have believed Swigart violated the Statute because they were well aware Swigart's purpose was to lawfully engage in religious and political speech protected under the First Amendment.

54. In fact, on that same day, the Defendant Kennedy did not arrest or seek to prosecute another person, namely Defendant Schade who actually stood in the roadway and stopped cars and approached their windows to express favorable viewpoints regarding the Covid vaccine.

55. Indeed, Swigart's associate also witnessed Defendant Schade come out and stand in the street and stop traffic after Defendant Kennedy arrested Swigart.

56. Swigart's associate took video footage of Defendant Schade engaging in precisely the conduct that Defendant Kennedy just finished arresting Swigart for.

57. Defendant Schade stood in the street, forcing vehicles to come to a complete stop or else strike Defendant Schade.

58. Defendants did not arrest Defendant Schade for "interfering", "hindering" or "preventing the movement of persons on a public street, road, highway, or right-of-way", or with "obstructing" traffic when Defendant Schade stood in the middle of the street and stopped vehicles.

59. Defendants did not arrest Schade for this conduct because Schade's viewpoints were not "religious anti-vaccine" messages that Defendants wanted to punish.

60. Defendants arrested Swigart for passing out "religious literature."

61. Two weeks after the vaccine event, after Defendant Kennedy realized his jurisdictional error when citing Plaintiff, a supervising deputy signed off on a new citation, correcting the jurisdiction error, and Swigart was served with a replacement citation, according to Defendants' policy.

62. Swigart had engaged in these same activities before in other jurisdictions, and officers and law enforcement who were not willing to retaliate against his constitutionally protected viewpoints, and they did not arrest him for passing out literature.

63. Defendants' conduct and animosity towards Swigart's viewpoints was unreasonable.

64. After Defendants filed their retaliatory charges in the Sandusky Municipal Court, the matter was dismissed on March 19, 2024.

65. The County Health Department and Sheriff's Department was aware that Swigart was arrested for passing out "religious anti-vaccine literature."

66. Defendant County ratified these actions, and failed to properly discipline the individual Defendants for abusing their police power to punish peaceful protestors.

67. Defendants had the decision-making power to decide to bring retaliatory charges against Swigart, so the Defendants created county policy when they retaliated against Swigart.

## COUNT I – FIRST AMENDMENT RETALIATION

68. Swigart restates all previous paragraphs.

69. The roundabout was a public street, and it was a traditional public forum.

70. Swigart was expressing viewpoints about matters of public concern.

9

71. Defendants knew that Swigart was passing out information it understood as "religious anti-vaccine" literature.

72. Defendants knew that Swigart was communicating his protected viewpoints to drivers.

73. Defendants first began harassing and intimidating Swigart because he was passing out viewpoints they disfavored.

74. Ultimately, Defendants arrested Swigart to retaliate against him for passing out critical literature.

75. Defendants maliciously retaliated against Swigart's viewpoints in violation of the First Amendment of the United States Constitution.

76. Swigart is entitled to damages, punitive damages (against the individuals), injunctive relief, declaratory judgment, attorney fees, and costs.

## COUNT II – FIRST AMENDMENT RESTRAINT

77. Swigart restates all previous paragraphs.

78. Swigart attended the vaccine event to communicate constitutionally protected religious and political viewpoints.

79. Defendants immediately set out to restrain Swigart's free speech rights because Defendants disagreed with Swigart's viewpoints.

80. Indeed, Defendants records indicate they made initial contact with Swigart for no other reason than Swigart was passing out what they understood as "religious anti-vaccine" material.

81. Defendants told Swigart that he and his associate were not permitted to approach vehicles to pass out this religious literature.

82. Defendants' actions were motivated to restrain and censor Swigart's speech with the threat of arrest.

83. Eventually, Swigart capitulated in the face of these unlawful threats, and he left the event out of fear of arrest.

84. Defendants, taking advantage of Defendant Kennedy's arrest authority, followed Swigart, and maliciously arrested him in order to chill his efforts to pass out his literature at the January 11, 2024 event and at future events.

85. Swigart is entitled to damages, punitive damages (against the individuals), injunctive relief, declaratory judgment, attorney fees, and costs.

## COUNT III – FIRST AMENDMENT FREE EXERCISE

86. Swigart restates all previous paragraphs.

87. Swigart is Catholic and practices his faith.

88. Swigart was passing out literature intended to communicate his religious beliefs.

89. Defendants understood that Swigart was passing out "religious literature."

90. Defendants wanted to interfere with Swigart's constitutionally protected rights to pass out literature and communicate his religious viewpoints.

91. Defendants intimidated, harassed, and ultimately maliciously arrested Swigart for passing out his religious literature in violation of the free exercise clause of the First Amendment.

92. Swigart is entitled to damages, punitive damages (against the individuals), injunctive relief, declaratory judgment, attorney fees, and costs.

## **COUNT IV – FOURTH AMENDMENT SEARCH, SEIZURE, ARREST, AND PROSECUTION**

93. Swigart restates all previous paragraphs.

94. Defendants had no probable cause to reasonably believe that Swigart was stopping traffic to interfere with anyone's rights or for any unlawful purpose.

95. As a matter of fact, Defendants understood Swigart was approaching vehicles that had stopped of the driver's own volition and rolled down their windows for no other reason than to pass out "religious literature" that Defendants considered to present "anti-vaccine" information.

96. Therefore, Defendants were aware that Swigart's purpose in talking to drivers was for the entirely "lawful" purpose of engaging in protected political and religious speech.

97. Engaging in protected speech is serving a lawful purpose, and it is not intended to interfere with the rights of others, so it is permitted conduct under the express language of R.C. § 2917.11(A)(4).

98. Indeed, every driver had every right to refuse to accept Swigart's speech, tear up his flyers, and go on to receive their vaccine and gift card.

99. Moreover, R.C. § 2917.11(A)(4) is a minor crime that Defendants do not usually enforce against people engaging in favorable viewpoints.

100. Indeed, it is well known that people frequently approach car windows to speak to drivers without prosecution.

101. In fact, on that same day, Swigart's associate was able to film Defendant Schade engaged in the conduct that Defendants arrested Swigart for.

102. There is video footage of Defendant Schade standing in the street, stopping vehicles, approaching car windows, and speaking to the drivers through their car windows.

103. Defendants thus discriminated against Swigart's viewpoints and applied R.C. § 2917.11(A)(4) against Swigart in a manner intended to punish and chill speech.

104. Defendants had no probable cause to arrest Swigart, so Defendants falsely arrested Swigart.

105. Defendants had no probable cause to handcuff, restrain, search or otherwise impede Swigart's movement.

106. Defendants' search of Swigart, seizure of Swigart, arrest of Swigart, and prosecution of Swigart violated the Fourth Amendment of the United States Constitution.

107. Defendants acted maliciously with the intent to intimidate Swigart without probable cause.

108. Swigart is entitled to damages, punitive damages (against the individuals), injunctive relief, declaratory judgment, attorney fees, and costs.

### COUNT V – BATTERY
### (against Defendant Kennedy only)

109. Swigart restates all previous paragraphs.

110. Defendant Kennedy arrested Swigart for engaging in protected speech and lawfully passing out literature.

111. Defendant Kennedy had no lawful purpose to arrest or handcuff Swigart.

13

112. Defendant Kennedy nonetheless unlawfully handcuffed Swigart and offensively touched Swigart's person.

113. Defendant Kennedy intentionally made offensive contact with Swigart and damaged him.

114. Defendant Kennedy acted maliciously, and with the intent to intimidate Swigart through this harmful and offensive contact.

115. Swigart is entitled to damages, punitive damages (against the individuals), injunctive relief, declaratory judgment, attorney fees, and costs.

**WHEREFORE**, Swigart respectfully requests that this Court finds for him and awards him the following relief:

    a. Injunctive relief;

    b. Declaratory judgment;

    c. Compensatory damages;

    d. Punitive damages against the individuals;

    e. Interest;

    f. Nominal damages;

    g. Attorney fees;

    h. Costs and expenses; and

    i. Any and all other relief available under law or equity.

Respectfully submitted,

***/s/ Matt Miller-Novak***
Matt Miller-Novak, Esq. (0091402)
Barron, Peck, Bennie, &
Schlemmer, Co. LPA
3074 Madison Road,
Cincinnati, OH 45209
Phone: 513-721-1350
Fax:513-721-2301
MMN@BPBSLaw.com

***/s/ Robert Thompson***
Robert Thompson, Esq. (0098791)
Thompson Legal, LLC
10529 Timberwood Circle, Unit B
Louisville, KY 40223
P: 502-366-2121
F: 502-438-9999
robert@rthompsonlegal.com